**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THERESA SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:10CV 2334 LMB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision

denying the application of Theresa Smith for Disability Insurance Benefits under Title II of the

Social Security Act and Supplemental Security Income under Title XVI of the Act.  This case has

been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice

Reform Act and is being heard by consent of the parties.  See 28 U.S.C. § 636(c).  Plaintiff has

filed a Brief in Support of the Complaint.  (Document Number 13).  Defendant has filed a Brief in

Support of the Answer.  (Doc. No. 14).

**Procedural History**

On December 21, 2007, plaintiff filed her application for benefits, claiming that she

became unable to work due to her disabling condition on December 18, 2006.[1]  (Tr. 108-116).

---

[1]At the hearing, plaintiff amended her alleged onset date of disability to March 1, 2009.
(Tr. 16, 35).

- 1 -

This claim was denied initially, and following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated December 7, 2009. (Tr. 69-73, 13-24). On October 20, 2010, the Appeals Council denied plaintiff's request for review. (Tr. 1-5). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

### Evidence Before the ALJ

A.    **ALJ Hearing**

Plaintiff's administrative hearing was held on September 29, 2009. (Tr. 31). Plaintiff was present and was represented by counsel. (Id.).

Prior to the hearing, the ALJ discussed the evidence in the record regarding plaintiff's drug abuse and asked counsel whether he wished to proceed. (Tr. 31-35). The ALJ noted that plaintiff had tested positive for drugs on multiple occasions, the most recent occasion being three weeks prior to the hearing. (Tr. 31). Plaintiff's attorney stated that plaintiff's drug abuse was not a substantial factor contributing to her disability. (Tr. 32). Plaintiff's attorney indicated that plaintiff had also tested negative for drugs, and that she was trying to abstain from drugs. (Id.). Plaintiff's attorney stated that he would obtain the records of these drug screens. (Id.). Plaintiff's attorney stated that plaintiff wished to proceed with the hearing. (Tr. 35).

The ALJ also questioned plaintiff's attorney regarding plaintiff's receipt of unemployment benefits in 2007, 2008, and 2009. (Id.). Plaintiff's attorney stated that plaintiff had worked for Southside Wellness Center and Thomas Business during this period. (Id.).

The ALJ then examined plaintiff, who testified that she lived in a home with her sister and her boyfriend. (Tr. 38).

- 2 -

Plaintiff stated that she had a twelfth grade education, with training as a home health aide and a maintenance worker.  (Id.).  Plaintiff testified that she worked as a home health care aide for Thomas Business and for Southside Wellness.  (Tr. 39).

Plaintiff stated that she stopped receiving unemployment benefits in March of 2009.  (Id.).

Plaintiff testified that her workers' compensation case settled in November of 2008.  (Id.).  Plaintiff stated that Southside Wellness doctors performed the maximum medical improvement exam in connection with her workers' compensation case in 2008.  (Id.).  Plaintiff testified that she participated in vocational rehab in 2007.  (Id.).

Plaintiff stated that she spent time in jail on one occasion, in 2006, for allegedly stealing a money order.  (Tr. 41).

Plaintiff testified that she participated in outpatient rehab for alcohol or drugs on two occasions.  (Tr. 42).

Plaintiff's attorney stated that plaintiff's impairments that prevent her from working are her chronic back pain, depression, and post-traumatic stress disorder ("PTSD").[2]  (Tr. 43-44).  In response to questioning by the ALJ about this back pain, plaintiff's attorney indicated that there was no objective evidence, such as x-rays or MRIs, indicating something other than a strain or sprain.  (Tr. 43).

 Plaintiff's attorney then examined plaintiff, who testified that she experienced constant,

---

[2]Development of characteristic long-term symptoms following a psychologically traumatic event that is generally outside the range of usual human experience; symptoms include persistently re-experiencing the event and attempting to avoid stimuli reminiscent of the trauma, numbed responsiveness to environmental stimuli, a variety of autonomic and cognitive dysfunctions, and dysphoria.  Stedman's Medical Dictionary, 570 (28th Ed. 2006).

- 3 -

throbbing lower back pain.  (Tr. 44).  Plaintiff stated that her back pain increases when she sits for long periods, stands for long periods, or lies on her back.  (Tr. 45).  Plaintiff testified that she has to lie on her side.  (Id.).  Plaintiff stated that her pain decreases somewhat when she takes her medication.  (Id.).

Plaintiff testified that she uses a walker the majority of the time.  (Tr. 46).  Plaintiff stated that Dr. Walter Griffin at Grace Hill prescribed the walker in 2007.  (Tr. 47).  Plaintiff testified that she had previously used a cane, although the cane was not prescribed by a doctor.  (Id.).  Plaintiff stated that she required the cane because she wobbled when she walked.  (Id.).

Plaintiff testified that her pain had worsened over the years.  (Tr. 48).  Plaintiff stated that she was seeing Dr. V. Pachalla at Grace Hill for treatment.  (Id.).  Plaintiff testified that Dr. Pachalla was planning on referring her to a pain management doctor.  (Id.).

Plaintiff stated that she started experiencing depression in 2007, and that it worsened in 2008.  (Tr. 49).  Plaintiff testified that she sought treatment for her depression at Metropolitan Psychiatric Center in 2009.  (Id.).  Plaintiff stated that she also experienced nightmares, which she reported to her doctor.  (Id.).  Plaintiff testified that she was prescribed medication for the nightmares, although she still experienced nightmares.  (Id.).

Plaintiff stated that her memory was "okay."  (Tr. 50).  Plaintiff testified that her medication occasionally affected her concentration.  (Id.).  Plaintiff stated that she becomes nervous when around groups of people.  (Id.).  Plaintiff testified that she was unable to handle any stress.  (Tr. 52).

Plaintiff testified that she participated in a detox rehab program at Black Alcohol Drug Service Information Center ("BASIC").  (Tr. 50).  Plaintiff stated that her records at BASIC

indicated that her participation was minimal because she did not want to talk during group therapy. (Tr. 51). Plaintiff testified that she felt more comfortable talking during individual therapy. (Tr. 52).

Plaintiff stated that her counselor at BASIC referred her to Provident for treatment of her depression in August of 2009. (Id.). Plaintiff stated that she also discussed her drug problems at Provident. (Tr. 53). Plaintiff testified that she was unable to continue treatment at Provident because she could not afford the $20.00 co-pay. (Id.). Plaintiff stated that she was waiting to receive a list of Medicaid providers who she could see at no cost. (Id.).

The ALJ questioned plaintiff regarding a drug screen that was positive for marijuana and cocaine shortly after she began treatment at Provident. (Tr. 54). Plaintiff testified that she had not used marijuana since December of 2008, and that she had never used cocaine. (Id.). Plaintiff stated that she first went to rehab for marijuana in early 2006. (Id.). Plaintiff testified that the second time she went to rehab, she smoked marijuana to relax her knee and her muscles, but she had not used marijuana since that time. (Tr. 54-55).

Plaintiff's attorney then questioned plaintiff, who testified that she had never smoked marijuana on a daily basis. (Tr. 55).

Plaintiff stated that she was only able to walk the length of three houses on a block before she had to stop due to weakness in her knees. (Id.). Plaintiff stated that she was able to stand about fifteen minutes before her legs became weak. (Tr. 56). Plaintiff testified that she was able to sit for about fifteen minutes before she had to stand. (Id.). Plaintiff stated that she was unable to lift "anything," including a gallon of milk. (Id.). Plaintiff testified that she had difficulty bending and stooping. (Tr. 57).

Plaintiff stated that she required assistance getting out of the bathtub.  (Id.).  Plaintiff testified that she was unable to do any housework.  (Id.).  Plaintiff stated that her sister handled all of the housework and grocery shopping.  (Id.).

Plaintiff testified that she did not visit friends or relatives outside her home.  (Id.).  Plaintiff stated that she attended early Mass, which lasted forty-five minutes.  (Id.).  Plaintiff testified that she had to change positions frequently during Mass.  (Tr. 58).

Plaintiff stated that she usually gets up at 5:00 a.m. and takes her medication.  (Id.).  Plaintiff testified that her sister makes her breakfast.  (Id.).  Plaintiff stated that, after she eats breakfast, she usually naps from about 9:00 a.m. until 2:00 p.m.  (Id.).  Plaintiff stated that her medication makes her drowsy.  (Id.).  Plaintiff testified that she attends class at BASIC on Mondays.  (Id.).  Plaintiff stated that after she naps, she usually watches television, exercises her legs, and then lies down again.  (Id.).  Plaintiff testified that she is unable to make it through a day without lying down.  (Id.).

The ALJ then re-examined plaintiff, who testified that her back problems started in 2007, after she was injured on the job while working for a home health care company.  (Tr. 59).  Plaintiff stated that marijuana helped her pain.  (Id.).  Plaintiff testified that she started smoking marijuana in 2007.  (Id.).  The ALJ noted that plaintiff's detox and rehab records indicate that she reported starting smoking marijuana when she was sixteen.  (Tr. 60).  Plaintiff testified that she smoked marijuana when she was sixteen.  (Id.).

The ALJ indicated that he would hold the record open for a month so that additional medical records could be submitted.  (Id.).

The ALJ then pointed out inconsistencies in plaintiff's testimony.  (Tr. 61-62).

- 6 -

Specifically, the ALJ noted that all of plaintiff's MRIs and x-rays were negative, plaintiff had inconsistent stories regarding her drug and alcohol use, plaintiff tested positive for opiates when she was not prescribed opiates, plaintiff reported living alone to her doctors while she testified at the hearing that she lived with her sister and boyfriend, and she testified that her walker was prescribed by Dr. Griffith, but the record does not contain this prescription.  (Id.).  The ALJ also pointed out that plaintiff was wearing a back brace at the hearing, although there was no record of this being prescribed by any physician.  (Tr. 62).  The ALJ stated "I think we've just been witness to a very elaborate performance here put on by the Claimant and unfortunately her doctors get a lot of that performance too from her."  (Tr. 62-63).

## B.    Relevant Medical Records

The record reveals that Thomas F. Musich, M.D. re-evaluated plaintiff at the request of plaintiff's attorney on January 15, 2008.  (Tr. 406-08).  Dr. Musich had previously evaluated plaintiff in October 2007 regarding a work-related injury sustained on December 18, 2006.  (Tr. 406).  Plaintiff reported increased back pain, pain in her left gluteal regions and into her leg, weakness in her right foot, and increased left groin pain.  (Id.).  Plaintiff was working part-time as a home healthcare aide.  (Id.).  Upon physical examination, Dr. Musich noted some tenderness of the spine, weakness of the left foot, and decreased range of motion of the lumbar spine.  (Tr. 407).  Dr. Musich expressed the opinion that plaintiff's work trauma of December 18, 2006 was the prevailing factor in the development of acute pain syndrome.  (Tr. 408).  Dr. Musich indicated that plaintiff required additional evaluation with MR imaging of her lumbosacral spine and left groin.  (Id.).

On January 18, 2008, Paul B. Hoffman, D.C. indicated that plaintiff had been seen with complaints of low back pain following a work-related injury.  (Tr. 410).  Dr. Hoffman diagnosed

- 7 -

plaintiff with lumbar nerve root compression, lumbar strain/sprain, and right lumbar neuralgia.[3] (Id.).
Dr. Hoffman indicated that plaintiff had received conservative treatment, including mild spinal
manipulation and physiotherapy. (Tr. 411).

In a letter dated January 29, 2008, W. Christopher Kostman, M.D., indicated that plaintiff had
undergone x-rays and an MRI scan, which were negative. (Tr. 421). Dr. Kostman recommended
that plaintiff continue with a home exercise program, resume her regular activities, and follow-up on
an as-needed basis. (Id.).

On February 26, 2008, V. Pachalla, M.D. completed a "Medical Report Including Physician's
Certification/Disability Evaluation." (Tr. 433-34). Dr. Pachalla indicated that plaintiff had been
diagnosed with chronic pain in the lower leg and insomnia. (Tr. 434). Dr. Pachalla noted that
plaintiff had difficulty walking, and that she walked with a cane. (Id.). Dr. Pachalla indicated that
plaintiff was expected to be disabled/incapacitated for six to twelve months. (Id.). Dr. Pachalla
recommended that plaintiff undergo an MRI. (Id.).

In a letter addressed "To Whomever it May Concern" dated April 22, 2008, Dr. Pachalla
stated that plaintiff had been treated at Grace Hill for left leg pain for two years. (Tr. 432). Dr.
Pachalla stated that plaintiff was "unable to work or go to school due to her problems with pain, and
also her inability to walk without assistance." (Id.).

On July 18, 2008, Dr. Pachalla completed a "Work Capability Form," in which he indicated
that plaintiff was still under treatment for low back pain and left leg pain. (Tr. 430-31). Dr. Pachalla
expressed the opinion that plaintiff was able to lift or carry less than ten pounds due to pain. (Tr.

---

[3]Pain of a severe, throbbing, or stabbing character in the course or distribution of a nerve.
Stedman's at 1307.

430).  Dr. Pachalla found that plaintiff was unable to stand, able to sit less than two hours, and unable to engage in any postural activities.  (Tr. 430-31).  Dr. Pachalla found that plaintiff's ability to reach and handle were limited.  (Tr. 431).

Plaintiff saw Boris Khariton, M.D. on June 11, 2008, for an evaluation of her low back pain. (Tr. 650-51).  Dr. Khariton noted that he had treated plaintiff for an injury to her left lower extremity sustained in December 2006, and that plaintiff was released to regular activity at work.  (Tr. 650). Plaintiff reported that she did not remember when she started having low back pain.  (Id.).  Plaintiff's general physical examination was unremarkable.  (Id.).  Plaintiff was "moaning and groaning" during the examination.  (Id.).  Plaintiff's lower extremity examination revealed decreased  sensation in the left lower extremity, mild give-way weakness in the left lower extremity due to pain complaints, pain with very superficial palpation, and negative straight leg raise test.  (Tr. 651).   Plaintiff ambulated with slow cadence with shifting weight on the right and limping on the left side, and she was unable to squat due to pain anticipation.  (Id.).  Dr. Khariton's impression was left hip and thigh pain and low back pain, per patient complaints; history of a work-related injury on December 18, 2006; signs of symptom magnification such as low back pain with very superficial palpation over the lumbar area, low back pain with whole body rotation and axial loading, as well as whole left lower extremity numbness.  (Id.).  Dr. Khariton stated that plaintiff's "clinical picture during my examination today does not match with the actual symptom the patient is describing.  She also has some signs of symptom magnifications described above." (Id.).  Dr. Khariton indicated that plaintiff did not require any further imaging.  (Id.).

Plaintiff presented to the emergency room at St. John's Mercy Medical Center on June 11, 2008, with complaints of chest, neck, and back pain after being involved in a motor vehicle accident.

(Tr. 436-52). Plaintiff was diagnosed with a chest contusion, back sprain, and abdominal pain. (Id.). Plaintiff underwent CT scans of the thoracic spine, cervical spine, and lumbar spine, which were normal. (Tr. 450-52).

Plaintiff saw a neurologist at St. Louis Connect Care on July 18, 2008. (Tr. 455-57). Upon examination, plaintiff had an antalgic[4] gait, and was unable to tandem walk. (Id.). Plaintiff was diagnosed with back pain. (Tr. 455). Plaintiff was advised to increase her activity. (Id.).

Plaintiff presented to the emergency room on November 3, 2008, with complaints of worsening back pain after sustaining a fall the previous day. (Tr. 486). Upon examination of the back, no tenderness was noted. (Tr. 487). Plaintiff underwent x-rays of the lumbosacral spine, which were normal. (Id.). Plaintiff was diagnosed with acute lumbar strain and chronic back pain. (Tr. 488).

Plaintiff saw Walter J. Griffin, M.D. at John C. Murphy Health Center on December 1, 2008. (Tr. 615-17). Plaintiff complained of pain in her back and left leg. (Tr. 615). It was noted that plaintiff uses marijuana. (Id.). Dr. Griffin noted that plaintiff walked with a cane, had decreased range of motion of the spine, tenderness with palpation over the left SI joint, and positive crossed straight leg raising. (Tr. 617). Dr. Griffin diagnosed plaintiff with lumbago,[5] benign hypertension, and sciatica.[6] (Id.).

---

[4]Painful gait. See Stedman's at 99.

[5]Pain in mid and lower back; a descriptive term not specifying cause. Stedman's at 1121.

[6]Pain in the lower back and hip radiating down the back of the thigh into the leg, initially attributed to sciatic nerve dysfunction, but now known to usually be due to herniated lumbar disk compressing a nerve root. Stedman's at 1731.

- 10 -

On December 4, 2008, Dr. Pachalla prescribed a walker "for imbalance gait." (Tr. 645).

Plaintiff presented to the emergency room on January 12, 2009, with complaints of back pain. (Tr. 472-81). Plaintiff was diagnosed with chronic back pain. (Id.).

Plaintiff presented to Dr. Griffin on January 12, 2009, with complaints of severe back pain. (Tr. 609). Dr. Griffin found that plaintiff had decreased range of motion of the spine, and her movements were painful. (Id.). Dr. Griffin diagnosed plaintiff with lumbago and prescribed Tramadol.[7] (Id.). On April 17, 2009, plaintiff reported that she was denied Medicaid and requested that Dr. Griffin override the decision. (Tr. 603). Dr. Griffin advised plaintiff that he could not override the decision. (Id.). It was noted that plaintiff used marijuana. (Id.).

On April 21, 2009, plaintiff saw Collins Lewis, M.D. for a Missouri Department of Mental Health screening. (Tr. 535-38). Plaintiff complained of depression. (Tr. 535). Dr. Lewis found that plaintiff's mood was depressed, plaintiff exhibited assaultive ideas, helplessness, and hopelessness. (Tr. 536). Plaintiff's insight and judgment were normal. (Tr. 537). Dr. Lewis diagnosed plaintiff

---

[7]Tramadol is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time. See Physician's Desk Reference (PDR), 2429 (63rd Ed. 2009).

with major depressive disorder,[8] single episode; and assessed a GAF score[9] of 45.[10]  (Tr. 538).  Dr. Lewis checked a box indicating that plaintiff was markedly mentally ill.  (Tr. 537).  Dr. Lewis prescribed Elavil[11] and Celexa.[12]  (Tr. 538).  Plaintiff saw Dr. Lewis on June 16, 2009, at which time he found that plaintiff's mood was depressed, and plaintiff exhibited assaultive ideas, suspiciousness, helplessness, and hopelessness.  (Tr. 531).  Dr. Lewis diagnosed plaintiff with major depressive disorder and PTSD, with a GAF score of 45.  (Tr. 533).

On July 4, 2009, Dr. Pachalla completed a "Medical Report Including Physician's Certification/Disability Evaluation."  (Tr. 583-84).  Dr. Pachalla indicated that plaintiff had been diagnosed with chronic lower back pain, PTSD, and social issues.  (Tr. 584).  Dr. Pachalla stated that plaintiff was unable to work due to pain.  (Id.).  Dr. Pachalla noted that plaintiff needed a pain management referral.  (Id.).

---

[8]A mental disorder characterized by sustained depression of mood, anhedonia, sleep and appetite disturbances, and feelings of worthlessness, guilt, and hopelessness.  Stedman's at 515.

[9]The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness" which does "not include impairment in functioning due to physical (or environmental) limitations."  Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th Ed. 1994).

[10]A GAF score of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV at 32.  A GAF score of 51-60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Id. at 32.

[11]Elavil is an antidepressant indicated for the treatment of depression and other mood disorders.  See WebMD, http://www.webmd.com/drugs (last visited February 28, 2012).

[12]Celexa is an antidepressant indicated for the treatment of depression.  See PDR at 1161.

Plaintiff presented to the emergency room on July 13, 2009, with complaints of back pain after falling at home. (Tr. 466). Upon examination, it was noted that plaintiff had no back tenderness, and had decreased range of motion, which was perhaps due to lack of cooperation. (Tr. 550). Plaintiff underwent x-rays of the lumbar spine, which were normal. (Tr. 551). Plaintiff was diagnosed with back pain. (Tr. 552).

Plaintiff saw Dr. Pachalla on July 21, 2009, with complaints of chronic pain and post-traumatic stress. (Tr. 640). Upon physical examination, Dr. Pachalla noted that inspection revealed no abnormality and that plaintiff's lateral flexion was normal. (Tr. 641). Dr. Pachalla noted left leg weakness, limping, walking with a cane, and positive straight leg raising test with plaintiff in a supine position. (Id.). Upon psychiatric examination, Dr. Pachalla found that plaintiff's affect was normal and she was not anxious. (Id.). Dr. Pachalla also noted that plaintiff had poor insight, judgment, attention span, and concentration. (Id.). Dr. Pachalla diagnosed plaintiff with left leg joint pain, chronic pain, and depressive disorder, not otherwise classified. (Tr. 642). Dr. Pachalla prescribed Elavil, Neurontin,[13] Vicodin,[14] and Paxil.[15] (Id.).

Dr. Pachalla completed a "Physician's Assessment for Social Security Disability Claim" on August 11, 2009. (Tr. 586). Dr. Pachalla indicated that plaintiff had been diagnosed with chronic lower back pain radiating into her left leg, and weakness for the past two years. (Tr. 586). When asked how well plaintiff was able to deal with stress, be expected to relate to co-workers or

---

[13]Neurontin is indicated for the treatment of nerve pain. See WebMD, http://www.webmd.com/drugs (last visited February 28, 2012).

[14]Vicodin is indicated for the relief of moderate to moderately severe pain. See PDR at 529.

[15]Paxil is an antidepressant indicated for the treatment of depression and other mood disorders. See PDR at 1536-37.

supervisors, be reliable and maintain attention and concentration, Dr. Pachalla responded: "Not much. In lot of pain, irritable, walking with a cane." (Id.). Dr. Pachalla found that plaintiff would need to rest every one to two hours in an eight-hour workday. (Id.). Dr. Pachalla expressed the opinion that plaintiff's pain would prevent her from engaging in sustained full-time employment at the sedentary level. (Id.).

In a letter dated August 27, 2009, Ida J. Grider, MA, LPC, indicated that plaintiff had been seen on two occasions since August 13, 2009 at Provident Counseling for "difficulty dealing with the loss of her ability to perform the duties of her past career." (Tr. 595). Ms. Grider stated that plaintiff was "grieving over the loss of her health." (Id.). Ms. Grider stated that plaintiff was working on decreasing hopelessness and working on her depression issues. (Id.).

In a letter dated September 2, 2009, Dorothy Robinson-Holliday, a Community Support Worker at BASIC, stated that plaintiff was admitted on December 2, 2008, at which time it was found that she had moderate problems with alcohol, drugs, and family. (Tr. 597). Ms. Robinson-Holliday stated that plaintiff was transferred to the final phase of treatment on May 28, 2009, and that her participation throughout the program was "minimal." (Id.). Ms. Robinson-Holliday noted that plaintiff's drug screen collected on May 15, 2009 returned positive for opiates, "as expected due to pain medications for her injuries." (Id.). Ms. Robinson-Holliday stated that plaintiff was referred to Metropolitan Psychiatric Center on June 15, 2009, because she admitted to aggressive behavior and restlessness. (Id.). Ms. Robinson-Holliday indicated that plaintiff would continue treatment services until she was stabilized in all areas and completed master treatment plan goals. (Tr. 598).

The record reveals that plaintiff underwent laboratory testing on September 3, 2009, which detected marijuana, and cocaine metabolite. (Tr. 625).

## The ALJ's Determination

The ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.   The claimant has not engaged in substantial gainful activity since March 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3.   The claimant has the following severe impairments: history of lumbar strain and sprain and depression (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the ability to understand, remember, and carry out at least simple instructions and non-detailed tasks, to maintain concentration and attention for two hour segments over an eight hour period, to demonstrate adequate judgment and make adequate decisions, to respond appropriately to supervisors and coworkers in a task oriented setting where contact with others is casual and infrequent, to adapt to routine/simple work changes, to take appropriate precautions to avoid hazards, to perform repetitive work according to set procedures, sequence, and pace, and to perform work at a normal pace.

6.   The claimant is capable of performing past relevant work as a home health care aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.   The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2009 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 18-23).

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability insurance benefits filed on December 21, 2007, the claimant is not disabled under sections      216(I) and 223(d) of the

- 15 -

Social Security Act.

Based on the application for supplemental security income filed on December 21, 2007, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 24).

## Discussion

### A.   Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency.  See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).  The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it.  See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000).  Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.  See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998).  If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld.  See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).  The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision. See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) (citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)).  "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary." Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998).  The analysis required has been described as a "searching inquiry."  Id.

### B.   The Determination of Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

- 16 -

to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a). The claimant has the burden of proving that s/he has a disabling impairment. See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998). First, it is determined whether the claimant is currently engaged in "substantial gainful employment." If the claimant is, disability benefits must be denied. See 20 C.F.R. §§ 404.1520, 416.920 (b). Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. See 20 C.F.R §§ 404.1520 (c)), 416.920 (c)). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." Id. Age, education and work experience of a claimant are not considered in making the "severity" determination. See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). This listing is found in Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work. See 20 C.F.R. § 404.1520 (e), 416.920 (e). If the claimant is able to perform the previous work, in

- 17 -

consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled. See id. If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if s/he is not able to perform any other work. See id. Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

The Commissioner has supplemented this five-step process for the evaluation of claimants with mental impairments. See 20 C.F.R. §§ 404.1520a (a), 416.920a (a). A special procedure must be followed at each level of administrative review. See id. Previously, a standard document entitled "Psychiatric Review Technique Form" (PRTF), which documented application of this special procedure, had to be completed at each level and a copy had to be attached to the ALJ's decision, although this is no longer required. See 20 C.F.R. §§ 404.1520a (d), (d) (2), (e), 416.920a (d), (d) (2), (e); 65 F.R. 50746, 50758. Application of the special procedures required is now documented in the decision of the ALJ or Appeals Council. See 20 C.F.R. §§ 404.1520a (e), 416.920a (e).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. See 20 C.F.R. §§ 404.1520a (b) (1), 416.920a

- 18 -

(b) (1).  If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."  20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2).  The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work:  activities of daily living, social functioning, concentration, and persistence or pace.  See 20 C.F.R. §§ 404.1520a (b) (3), 416.920a (b) (3).  Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.  See id.  Next, the Commissioner must determine the severity of the impairment based on those ratings.  See 20 C.F.R. §§ 404.1520a (c), 416.920a (c).  If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.  See 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).  This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.  See id.  If there is a severe impairment but the impairment does not meet or equal the listings, then the Commissioner must prepare a residual functional capacity assessment.  See 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3).

## C.    Plaintiff's Claims

Plaintiff first argues that the ALJ erred in determining that plaintiff was capable of performing past relevant work.  Plaintiff next argues that the ALJ erred in determining plaintiff's residual functional capacity.  The undersigned will discuss plaintiff's claims in turn, beginning with the ALJ's residual functional capacity determination.

## 1.    Residual Functional Capacity

Plaintiff argues that the ALJ erred in determining plaintiff's residual functional capacity.

Specifically, plaintiff contends that, in determining plaintiff's residual functional capacity, the ALJ failed to afford controlling weight to the opinion of plaintiff's treating physician, Dr. Pachalla.

In analyzing medical evidence, "[i]t is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'" Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (quoting Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995)). "Ordinarily, a treating physician's opinion should be given substantial weight." Rhodes v. Apfel, 40 F. Supp.2d 1108, 1119 (E.D. Mo. 1999) (quoting Metz v. Halala, 49 F.3d 374, 377 (8th Cir. 1995)). Further, a treating physician's opinion will typically be given controlling weight when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." Prosch v. Apfel, 201 F.3d 1010, 1012-1013 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527 (d)(2) (bracketed material in original). Such opinions, however, do "not automatically control, since the record must be evaluated as a whole." Id. at 1013 (quoting Bentley, 52 F.3d at 785-786). Opinions of treating physicians may be discounted or disregarded where other "medical assessments 'are supported by better or more thorough medical evidence.'" Id. (quoting Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997)).

Whatever weight the ALJ accords the treating physician's report, be it substantial or little, the ALJ is required to give good reasons for the particular weight given the report. See Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001). The ALJ, however, is not required to discuss every piece of evidence submitted. See Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir. 1998). If the opinion of a treating physician is not well supported or is inconsistent with other evidence, the ALJ must consider: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of

examination or testing performed, (3) the degree to which the physician's opinion is supported by the relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered, and (6) other factors which may contradict or support the opinion. See Rhodes, 40 F. Supp.2d at 1119; 20 C.F.R. § 404.1527 (d)(2)-(6).

In her most recent statement, a "Physician's Assessment for Social Security Disability Claim" dated August 11, 2009, Dr. Pachalla expressed the opinion that plaintiff would need to rest every one to two hours in an eight-hour workday. (Tr. 586). Dr. Pachalla indicated that plaintiff's pain would prevent her from engaging in sustained full-time employment at the sedentary level. (Id.). Dr. Pachalla noted that plaintiff had been diagnosed with chronic lower back pain radiating into her left leg, and weakness for the past two years. (Id.). When asked how well plaintiff was able to deal with stress, be expected to relate to co-workers or supervisors, be reliable and maintain attention and concentration, Dr. Pachalla responded: "Not much. In lot of pain, irritable, walking with a cane." (Id.).

The ALJ stated that Dr. Pachalla's conclusions as a treating source cannot be given controlling weight unless they are supported by appropriate medical findings. (Tr. 22). The ALJ pointed out that plaintiff's MRI scans and x-ray evaluations have consistently failed to provide any etiology for her complaints. (Id.). The ALJ stated that plaintiff has not demonstrated actual medical findings of any disc protrusion or neurological deficits to provide a basis for her complaints. (Id.). Dr. ALJ noted that Dr. Khariton reported that plaintiff demonstrated symptom magnification. (Id.). The ALJ also pointed out that, although Dr. Pachalla prescribed a walker based on plaintiff's complaints, plaintiff was subsequently noted to be ambulating with a cane rather than a walker. (Id.).

- 21 -

The undersigned finds that the ALJ provided sufficient reasons for declining to assign controlling weight to Dr. Pachalla's opinion.  Opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data.  See Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995).  In this case, the ALJ found that Dr. Pachalla's opinion was not supported by appropriate medical findings and was inconsistent with the evidence of record.  See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (to warrant controlling weight, treating physician's opinion must be supported by medically acceptable diagnostic tests and not be inconsistent with other substantial evidence).

As the ALJ pointed out, MRI scans and x-rays have consistently been normal.  On January 29, 2008, W. Christopher Kostman, M.D. indicated that plaintiff had undergone x-rays and an MRI scan, which were negative.  (Tr. 421).  Dr. Kostman recommended that plaintiff resume her regular activities.  (Id.).  On June 11, 2008, plaintiff underwent CT scans of the thoracic spine, cervical spine, and lumbar spine, which were normal.  (Tr. 450-52).  Plaintiff underwent x-rays of the lumbosacral spine on November 3, 2008, which were normal.  (Tr. 487).  X-rays of the lumbar spine taken on July 13, 2009 were also normal.  (Tr. 551).  Further, as the ALJ noted, Dr. Khariton noted signs of symptom magnification during a June 2008 examination.  (Tr. 651).  As such, the ALJ's decision to discredit Dr. Pachalla's opinion because it was not supported by appropriate medical findings is supported by substantial evidence.

The ALJ made the following determination regarding plaintiff's RFC:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the ability to understand, remember, and carry out at least simple instructions and non-detailed tasks, to maintain concentration and attention for two hour segments over an eight hour period, to demonstrate adequate judgment and make adequate decisions, to respond appropriately to supervisors and

- 22 -

coworkers in a task oriented setting where contact with others is casual and
infrequent, to adapt to routine/simple work changes, to take appropriate precautions
to avoid hazards, to perform repetitive work according to set procedures, sequence,
and pace, and to perform work at a normal pace.

(Tr. 19).

A disability claimant's RFC is the most he or she can still do despite his or her limitations.

20 C.F.R. § 404.1545(a)(1).  In McCoy v. Schweiker, 683 F.2d 1138 (8th Cir. 1982) (en banc), the

Eighth Circuit defined RFC as the ability to do the requisite work-related acts "day in and day out,

in the sometimes competitive and stressful conditions in which real people work in the real world."

Id. at 1147.  The ALJ's determination of an individual's RFC should be "based on all the evidence in

the record, including 'the medical records, observations of treating physicians and others, and an

individual's own description of his limitations.'"  Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th

Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

Although a claimant's RFC is determined at step four of the sequential evaluation process,

where the burden of proof rests on the claimant, the ALJ bears the primary responsibility for

determining a claimant's RFC.  Id.  As noted, an RFC is based on all relevant evidence, but it "remains

a medical question" and "'some medical evidence must support the determination of the claimant's

[RFC].'"  Id. at 1023 (quoting Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001)).  The ALJ

is therefore required to consider at least some supporting evidence from a medical professional.

Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

The undersigned finds that the ALJ's determination is supported by substantial evidence.  The

ALJ's RFC is supported by the opinion of Dr. Khariton.  As previously noted, Dr. Khariton examined

plaintiff on June 11, 2008, and found evidence of symptom magnification.  (Tr. 651).  Dr. Khariton

indicated that he had previously treated plaintiff for the injuries sustained in the work-related accident

and that her care had been transferred to Dr. Kostman, who released her to regular activity at work. (Tr. 650). Dr. Khariton noted that plaintiff complained of back pain with very superficial palpation over the lumbar area, low back pain with whole body rotation and axial loading, and whole left lower extremity numbness. (Id.). Dr. Khariton stated that plaintiff's "clinical picture during my examination today does not match with the actual symptoms the patient is describing." (Id.). Dr. Khariton diagnosed plaintiff with left hip and thigh pain and low back pain, per patient complaints; history of work-related injury on December 18, 2006; and signs of symptom magnification. (Tr. 651). The opinion of Dr. Khariton, which indicates that plaintiff had been released to regular activity at work for her previous injury and that plaintiff's complaints of back pain had no objective basis, is consistent with the ability to perform light work.        In determining plaintiff's residual functional capacity, the ALJ also performed a proper credibility analysis. The ALJ first pointed out that, although plaintiff denied having ever used cocaine, laboratory testing was positive in August of 2009 for cocaine. (Tr. 23). In addition, plaintiff testified that she stopped using marijuana in December of 2008, yet she tested positive for marijuana use in August of 2009. (Id.). The ALJ also noted that plaintiff's participation in rehab was described as minimal. (Tr. 23, 597). The ALJ properly found that the inconsistencies found on the record regarding plaintiff's drug use detracted from plaintiff's credibility.

The ALJ next discussed plaintiff's daily activities. (Tr. 17). The ALJ noted that, despite plaintiff's testimony that she was unable to lift "anything," plaintiff indicated in her function report and testimony that she was able to shop for groceries, do laundry, wash dishes, drive, and attend church services. (Tr. 23, 162-69, 57). Significant daily activities may be inconsistent with claims of disabling pain. See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001). As such, the ALJ

properly determined that plaintiff's ability to engage in these activities on a regular basis appears inconsistent with the inability to work.

Finally, the ALJ pointed out that the objective medical evidence does not support plaintiff's subjective complaints. Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility. See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003). As previously discussed, the ALJ properly found that the medical evidence does not support plaintiff's allegations of a disabling impairment. Objective testing including MR imaging, CT scans, and x-rays have revealed no evidence of a basis for plaintiff's complaints.

With regard to plaintiff's mental impairments, plaintiff saw Collins Lewis, M.D. for a Missouri Department of Mental Health screening on April 21, 2009, due to complaints of depression. (Tr. 535-38). Dr. Lewis found that plaintiff's mood was depressed, and she exhibited assaultive ideas, helplessness, and hopelessness, although her insight and judgment were normal. (Tr. 537). Dr. Lewis diagnosed plaintiff with major depressive disorder, single episode; and assessed a GAF score of 45. (Tr. 538). On June 16, 2009, Dr. Lewis added a diagnosis of PTSD. (Tr. 533). On July 21, 2009, Dr. Pachalla noted poor insight, judgment, attention span, and concentration. (Tr. 641). Dr. Pachalla diagnosed plaintiff with depressive disorder, not otherwise classified. (Tr. 642). In a letter dated August 27, 2009, Ida J. Grider, MA, LPC, indicated that plaintiff had been seen on two occasions since August 13, 2009 at Provident Counseling for "difficulty dealing with the loss of her ability to perform the duties of her past career." (Tr. 595). Ms. Grider stated that plaintiff was "grieving over the loss of her health." (Id.). At the hearing, plaintiff testified that her memory was "okay," her

- 25 -

medication occasionally affects her concentration, she becomes nervous around groups of people, and she is unable to handle any stress. (Tr. 50-52).

As a result of plaintiff's mental impairments, the ALJ limited plaintiff to understanding, remembering, and carrying out at least simple instructions and non-detailed tasks; maintaining concentration and attention for two hour segments over an eight hour period; demonstrating adequate judgment and making adequate decisions; responding appropriately to supervisors and coworkers in a task oriented setting where contact with others is casual and infrequent; adapting to routine/simple work changes; taking appropriate precautions to avoid hazards; performing repetitive work according to set procedures, sequence, and pace; and performing work at a normal pace. (Tr. 19). The undersigned finds that these limitations are supported by the record as a whole. Plaintiff has failed to establish greater mental limitations than those found by the ALJ. In fact, plaintiff does not dispute the ALJ's findings regarding plaintiff's mental RFC.

**2.      Past Relevant Work**

Plaintiff also argues that the ALJ erred in determining plaintiff could return to her past relevant work. Specifically, plaintiff contends that the ALJ's determination is not supported by substantial evidence because it is conclusory.

The ALJ determines a claimant's ability to perform past work by comparing the claimant's RFC to the physical and mental demands of the claimant's past work. Evans v. Shalala, 21 F.3d 832, 833 (8th Cir. 1994). In making this comparison, the ALJ must detail the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's RFC. Groeper v. Sullivan, 932 F.2d 1234, 1238-39 (8th Cir. 1991). Taken together, "an ALJ has an obligation to fully investigate and make *explicit* findings as to the physical and mental demands of a claimant's past

- 26 -

relevant work and to compare that with what the claimant herself is capable of doing" before determining the claimant can perform his past relevant work. Id. at 1238. For a claim involving a mental or emotional impairment, the ALJ should obtain a precise description of the particular job duties likely to produce stress - such as speed, precision, complexity of tasks, independent judgment, and working with others - to determine if the claimant's mental impairment is compatible with the job. Id. A conclusory statement that the claimant can perform past work, without any explicit findings, does not constitute substantial evidence and will require remand. Id. at 1239.

In investigating the demands of a claimant's past work, the ALJ may rely on the claimant's description of his actual job, or may look to how the job is performed in the national economy. Stephens v. Shalala, 50 F.3d 538, 542 (8th Cir. 1995). "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." Lowe v. Apfel, 226 F.3d 969, 973 (8th Cir. 2000). The Dictionary of Occupational Titles (DOT) describes the demands of a job as it is usually performed in the national economy. See Kirby v. Sullivan, 923 F.2d 1323, 1327 (8th Cir. 1991). The ALJ satisfies the duty to make explicit findings by expressly referring to the DOT's specific job description of the claimant's past work. Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999). The ALJ may also rely on vocational expert testimony to fulfill this obligation. Ramirez v. Astrue, No. 06-5126-CV-SW-W-SSA, 2008 WL 880167, at *3 (W.D. Mo. March 28, 2008).

In this case, the ALJ concluded that plaintiff was capable of performing her past relevant work as a home health care aide. (Tr. 23). The ALJ stated that this work did not require the "performance of work-related activities precluded by the claimant's residual functional capacity." (Id.). The ALJ

- 27 -

further stated that, "[i]n considering the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed based on her description of her past work in Exhibits 3E and 4E." (Id.)

The undersigned finds that the ALJ erred in failing to make explicit findings regarding the physical and mental demands of plaintiff's past work as a home health care aide.  The ALJ made no express findings regarding the physical or mental demands of the job, either as plaintiff performed it or as generally performed.  The ALJ referred to plaintiff's description of her past work in her function report.  Plaintiff did report that she only lifted ten pounds as a home health care aide. (Tr. 148, 155).  Plaintiff did not, however, provide any information regarding the mental demands of her past work.  The ALJ did not elicit any testimony from plaintiff regarding the demands, physical or mental, of her past work.  Further, the ALJ did not obtain testimony from a vocational expert regarding the demands of plaintiff's past work.

Defendant contends that the ALJ's failure to include any discussion regarding the mental demands of plaintiff's work was harmless error.  Defendant argues that plaintiff's mental functioning did not appreciably deteriorate over the course of the relevant period to the point that she could not perform her work as a home health care worker.

The ALJ found that plaintiff's depression was severe and resulted in functional limitations. Specifically, the ALJ found that plaintiff was limited to:  understanding, remembering, and carrying out at least simple instructions and non-detailed tasks; maintaining concentration and attention for two hour segments over an eight hour period; demonstrating adequate judgment and making adequate decisions; responding appropriately to supervisors and coworkers in a task oriented setting where contact with others is casual and infrequent; adapting to routine/simple work changes; taking

- 28 -

appropriate precautions to avoid hazards; performing repetitive work according to set procedures, sequence, and pace; and performing work at a normal pace. (Tr. 19). The undersigned has found that these limitations are supported by the record as a whole. There is no evidence in the record, however, of the mental demands of plaintiff's past work. The ALJ's failure to set forth the mental demands of plaintiff's past work, and to compare that with what plaintiff is capable of doing was not harmless and requires reversal. See Groeper, 932 F.2d at 1239 (remanding case where the ALJ limited plaintiff to simple, repetitive work with minimal memory requirements yet failed to make specific findings as to the mental demands of plaintiff's past work). But see Samons v. Astrue, 497 F.3d 813, 821-22 (8th Cir. 2007) (affirming the Commissioner's decision when the ALJ's failure to make explicit findings as to the demands of plaintiff's past work was not prejudicial because the ALJ found that plaintiff could perform a full range of light work).

## Conclusion

In sum, the ALJ erred in failing to set forth the mental demands of plaintiff's past work, and to compare that with plaintiff's residual functional capacity. The decision of the ALJ is not, therefore, supported by substantial evidence. As such, this cause will be reversed and remanded to the ALJ in order for the ALJ to properly make specific findings as to the mental demands of plaintiff's past relevant work, either as plaintiff performed it, or in the national economy. The ALJ should then compare plaintiff's residual functional capacity to the demands of her past relevant work, and determine whether plaintiff is able to perform her past relevant work. Accordingly, a Judgment of Reversal and Remand will be entered separately in favor of plaintiff in accordance with this Memorandum.

Dated this __15th__ day of March, 2012.


LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE